**DELTA AIR LINES, INC., Petitioner,**

v.

**CIVIL AERONAUTICS BOARD,**
Respondent,

**Lake Central Airlines, Inc., et al.,**
Intervenors.

No. 248, Docket 25852.

United States Court of Appeals
Second Circuit.

Argued March 30, 1960.

Decided June 29, 1960.

**44**

R. S. Maurer, James W. Callison, Atlanta, Ga. (Frank F. Rox, Atlanta, Ga., of counsel), Legal Division, Delta Air Lines, Inc. for petitioner.

Robert A. Bicks, Acting Asst. Atty. Gen., Richard A. Solomon, Atty., Dept. of Justice; Franklin M. Stone, Gen. Counsel, Civil Aeronautics Bd.; John H. Wanner, Deputy Gen. Counsel; O. D. Ozment, Assoc. Gen. Counsel, Litigation and Research; Morris Chertkov, Atty., Civil Aeronautics Bd., Washington, D. C., for respondent.

Albert F. Grisard, Washington, D. C., for intervenor, Lake Central Airlines, Inc.

Before WATERMAN and MOORE, Circuit Judges, and SMITH, District Judge.

WATERMAN, Circuit Judge.

Petitioner is a certificated trunk-line air carrier possessing routes that, in the main, run from the mid-west to the southeast quarter of the country. The present controversy arises out of the Board's area proceeding known as the "Great Lakes-Southeast Service Case." Other aspects of this same area proceeding were recently before this court in Eastern Air Lines v. C. A. B., 2 Cir., 1959, 271 F.2d 752, 755, certiorari denied 362 U.S. 970, 80 S.Ct. 954, 4 L.Ed.2d 901. For a general description of this "area proceeding" and for a statement of the air transportation the Board had under consideration in the "Great Lakes-Southeast Service Case" we refer to our opinion in Eastern Air Lines v. C. A. B., supra.

In its decision and order in the above area proceeding, Order No. E–13024 of September 30, 1958, the Board added six cities to Delta's pre-existing Route 54, which prior to that time served Chicago and Miami with certain intermediate points, but bypassed Indianapolis. The addition to Delta's authority of the three cities of Columbus, Toledo, and Detroit permitted Delta for the first time to offer service between Miami and Detroit, and for that reason this authority extension was important to the issues presented to this court in Eastern Air Lines v. C. A. B., supra, but it has no bearing on the question now before us. The addition of the three cities of Dayton, Louisville, and Indianapolis permitted Delta for the first time to offer service between these cities and the other cities which lay on its Route 54. Since Indianapolis already was an authorized intermediate point on Delta's Route 8 between New Orleans and Detroit, the inclusion of Indianapolis as an intermediate point on Route 54 had the additional effect, which the Board recognized and approved, of permitting Delta on the same flight, provided that the flight stopped at Indianapolis, to serve cities on both of these routes.[1] By the Board's September 30 order Delta's new certificate, incorporating this additional authority, was to become effective on November 29, with the proviso that prior thereto the Board might extend

---

1. Unless the Board imposes "restrictions" a carrier may operate flights between any combination of authorized points on a given linear route. Similarly, absent restrictions, when two routes of a carrier have a common point, the carrier may operate flights between any combination of points on the two routes via the common point.

that effective date upon its own initiative or upon a petition for reconsideration of the Board's September 30 order. The new certificates of other carriers who had received new authorizations under the "Great Lakes-Southeast Service" decision had the same effective date and were subject to the same proviso.

Numerous petitions for reconsideration were indeed filed. Included among these were petitions by Lake Central Airlines, Inc. and Piedmont Aviation, Inc., two local service carriers. The new route applications of all local service carriers had been excluded by the Board from the "Great Lakes-Southeast Service Case," the Board stating that it would consider them later in a separate proceeding. The local service carriers, however, were permitted to intervene to present evidence as to the effect that an award to a trunkline carrier might have upon the local service carriers' present or contemplated operations. In their petitions for reconsideration Lake Central and Piedmont sought, *inter alia*, to have restrictions imposed on Delta's service between ten pairs of cities [2] which, as a result of the addition of Indianapolis, Louisville and Dayton to Route 54, Delta would be able to serve without restriction under the certificate authorized by the Board's September 30 decision. Lake Central's petition contained a request to stay the effective date of Delta's certificate. By order No. E–13190, dated November 21, the Board stayed the effectiveness of Delta's certificate for the period to and including December 6 for

the convenience of this court in considering Eastern's request for a judicial stay. Two other certificates were also stayed for this reason. On November 28, 1958 the Board issued Order No. E–13211, which, with one exception,[3] refused to stay the effective date of any new certificate beyond December 7. The Board assigned two interrelated reasons for its refusal to grant further stays. First, the Board found that the various reconsideration petitions did not make sufficient showings of probable legal error or abuse of discretion. Second, the Board wished to have the new services inaugurated in time for the peak period of winter travel. The Board's opinion in Order No. E–13211 closed with the statement that the order was not a disposition of the several petitions for reconsideration on their merits.[4]

On December 4 this court denied Eastern's request for a judicial stay, and, in recognition thereof, on December 5 the Board by Order No. E–13245 dissolved the stay imposed by Order No. E–13190. Accordingly, on December 5, 1958, Delta's certificate became effective. On January 1, 1959, pursuant to schedules filed with the Board, Delta inaugurated service between Chicago and Indianapolis, with flights continuing beyond Indianapolis southward to Evansville, Indiana, a city Delta was authorized to service on its previously established Route 8.

On May 7, 1959 the Board issued the order here complained of, Order No. E–13835.[5] This order constituted the

**2.** The ten pairs of cities are:
Indianapolis, Ind.-Chicago, Ill.; Indianapolis, Ind.-Cincinnati, Ohio; Indianapolis, Ind.-Louisville, Ky.; Indianapolis, Ind.-Lexington, Ky.; Indianapolis, Ind.-Asheville, N. C.; Dayton, Ohio-Lexington, Ky.; Dayton, Ohio-Asheville, N. C.; Cincinnati, Ohio-Louisville, Ky.; Louisville, Ky.-Lexington, Ky.; Louisville, Ky.-Asheville, N. C.

**3.** The exception was the certificate of Eastern Air Lines. Piedmont, in its petition for reconsideration, in addition to seeking to have restrictions imposed on Delta's service between the pairs of cities set forth in footnote 2, supra, sought to

prevent the extension of Eastern's Route 6 from Charleston, W. Va. to Chicago. In its opinion accompanying Order No. E–13211, the Board held that Piedmont's objections to Eastern's additional authorization raised serious questions; and accordingly it stayed the effective date of Eastern's new certificate until further action by the Board.

**4.** The opinion stated: "Nothing in the present order forecloses the Board from full and complete consideration of the pending petitions for reconsideration on their merits."

**5.** Delta's petition also encompasses Order No. E–14044 denying Delta's motion for

Board's formal disposition of the various petitions for its reconsideration of the September 30 decision. This order modified the former decision. One modification was that restrictions were imposed on Delta's service between the ten pairs of cities set forth in footnote 2, supra, so that a Delta flight serving any of the pairs of cities was required to originate at Atlanta or at a point on Route 54 south thereof.[6] One effect of the restrictions was to forbid the service Delta had inaugurated between Evansville and Chicago via Indianapolis unless that flight began at Atlanta and proceeded on a circuitous routing through Memphis.

The issue here is whether, on the above facts, the Board had power to alter Delta's certificate without resort to a modification proceeding under Section 401(g) of the Act, 49 U.S.C.A. § 1371(g).[7] It is the Board's contention that it may modify a certificate subsequent to the effective date of the certificate in the course of passing upon timely filed petitions for reconsideration of the award contained therein; and that the proceedings provided for in Section 401(g) only need to be followed after the Board has finally disposed of these petitions for reconsideration. We disagree.

Section 401(f), relating to the effective date and duration of an air carrier's certificate of public convenience and necessity provides as follows: "Each certificate shall be effective from the date specified therein, and *shall continue in effect until suspended or revoked as hereinafter*

*provided* \* \* \* " [8] (Italics supplied.) The phrase "as hereinafter provided" would appear to require our rejection of the Board's argument that it has some form of implied power to alter the authority conferred in an effective certificate. Section 401(g) is the only section of the Act expressly dealing with the modification of certificates. The Board maintains that power to modify an effective certificate can be found in Section 204(a), 49 U.S.C.A. § 1324(a), but this argument is almost identical to the position taken by the Interstate Commerce Commission in United States v. Seatrain Lines, 1947, 329 U.S. 424, 67 S.Ct. 435, 91 L.Ed. 396, and there rejected by the Supreme Court, supra, 329 U.S. at pages 432–433, 67 S.Ct. at page 439. This holding of the Supreme Court in Seatrain is likewise fully dispositive of any Board reliance upon Section 1005(d), 49 U.S.C.A. § 1485(d) as express statutory support for its position.

Save for the exceptions in Section 401(f) set forth in footnote 8, supra, Sections 401(f) and 401(g) are patterned very closely upon Section 212(a) of Part II of the Interstate Commerce Act, 49 U.S.C.A. § 312(a). In Smith Bros., Revocation of Certificate, 33 MCC 465, 472 (1942), the Interstate Commerce Commission in construing Section 212(a) announced the following principle: "We may issue decision upon decision, and order upon order, on an application for a certificate so long as sufficient reason therefor appears and until all controversy

---

a partial stay in order to permit the continuance of the Evansville-Indianapolis-Chicago service, and Order No. E–14224 denying Delta's petition for a stay pending judicial review.

6. The Board indicated that the advisability of these restrictions would be considered anew in the later local service carrier area proceeding.

7. Between the time of the Board's initial action and the modification on reconsideration, the Civil Aeronautics Act (52 Stat. 973, 49 U.S.C.A. § 401), was supplanted by the Federal Aviation Act (72 Stat. 731, 49 U.S.C.A. § 1301). The provisions of the former Act here involved

were re-enacted without change, and there is admittedly no issue here stemming from the supplantation of the Civil Aeronautics Act.

8. Section 401(f) states three exceptions, none here applicable, to the above rule. A certificate conferring temporary authority ceases to be effective upon the expiration of its term; a certificate will cease to be effective if the Board certifies that operations under the certificate have ceased; and if the carrier fails to inaugurate service authorized by a certificate within ninety days of the date of authorization, the Board upon notice and hearing may revoke the unused authority.

is determined, but once a certificate, duly and regularly issued, becomes effective, our authority to terminate it is expressly marked off and limited." The Board makes a futile effort to distinguish the Smith Bros. case on the ground that a revocation of a certificate is more closely circumscribed by statute than a certificate's modification. Under both Sections 212(a) of Part II of the Interstate Commerce Act and Section 401(g) of the Federal Aviation Act modification differs from revocation only as to the matters the Commission or Board must demonstrate *once a proper proceeding has been instituted.* The statutory requirement to institute a proceeding is the same whether the certificate is to be modified or revoked. The Smith Bros. case has been frequently cited with apparent approval in the Supreme Court and other federal courts. We follow it, believing its principle to be as applicable to the Federal Aviation Act as to Part II of the Interstate Commerce Act.

It is true that in cases involving motor carriers under Part II of the Interstate Commerce Act the Supreme Court has held that, under certain closely-defined circumstances, an effective certificate may be modified by the Commission without resort to a formal proceeding under Section 212(a). For instance, in American Trucking Ass'n v. Frisco Transp. Co., 1958, 358 U.S. 133, 146, 79 S.Ct. 170, 3 L.Ed.2d 172, the Supreme Court held that the Commission may so rectify "inadvertent ministerial errors." In the present case there is no suggestion that Delta's certificate inadvertently contained greater authority than the Board intended to confer by its September 30 order. Moreover, it is affirmatively clear that when the Board refused on November 28, 1958 to stay the effective date of Delta's certificate it was fully aware of the arguments which subsequently led it on May 7, 1959 to impose the restrictions here

complained of.[9] Indeed, for this reason, the present case is similar to Watson Bros. Transp. Co. v. United States, D.C. Neb.1955, 132 F.Supp. 905, affirmed 1956, 350 U.S. 927, 76 S.Ct. 302, 100 L.Ed. 810, where the three-judge district court concluded on the facts present there that the modification of a motor carrier's certificate had resulted from a change in administrative policy, and therefore held that the change was beyond the Interstate Commerce Commission's power. In any event, the present case is clearly distinguishable from the case of United States v. Rock Island Motor Transit Co., 1951, 340 U.S. 419, 71 S.Ct. 382, 95 L.Ed. 391, rehearing denied 341 U.S. 906, 71 S.Ct. 609, 95 L.Ed. 1344, where the Supreme Court held that the Commission had power, apart from a proceeding under Section 212(a), to impose specific restrictions to implement an already existing but somewhat generally-phrased restriction on the type of service the carrier was certificated to perform. We are of the opinion that the imposition of a restriction on service under a certificate that previously had authorized the service without any restriction presents an entirely different matter than that before the Court in Rock Island Motor Transit.

The Board, seeking to justify its act here on the basis of past performance, informs us that, in the past, upon a petition for rehearing, it has modified a certificate it had allowed to become effective.[10] However, on at least one other occasion it expressed grave doubt as to its statutory power to do so. Kansas City-Memphis-Florida Case, 9 CAB 401, 408–09 (1948). Moreover, the Board has represented to at least one court that it has been its practice to stay the effective date of a certificate in order to permit it time to consider the merits of reconsideration petitions. Southwest Airways v. C. A. B., 9 Cir., 1952, 196 F.2d 937, 938.[11] We do not find that the Board

---

9. See footnote 3, supra.

10. Cincinnati-New York Additional Service, 8 CAB 603, 604 (1947) seems to be the clearest example.

11. Western Air Lines v. C.A.B., 9 Cir., 1952, 194 F.2d 211 involved a Board procedure entirely different from that in the present case. In Western Air Lines the Board, subsequent to the effective

in this particular can rely upon a consistent administrative interpretation of its statutory powers similar to the consistent interpretation found in United States v. Leslie Salt Co., 1956, 350 U.S. 383, 396, 76 S.Ct. 416, 100 L.Ed. 441.

Finally, the Board argues that unless we uphold its position that resort to 401 (g) of the Act is unnecessary it will be confronted with a dilemma in the management of its large-scale area proceedings. In its brief the Board states: "Moreover, Delta's concept, if adopted, would be prejudicial both to the traveling public and the carriers, for in some cases it could only result either in a hasty and largely meaningless passing on reconsideration requests of a highly technical economic nature, or the further postponement of the effective dates of certificates with the attendant deprivation of needed public service and additional carrier revenues, on the small chance that a further review will result in a change of the original decision." We admit the Board's dilemma is real [12] but we find that this dilemma is inherent in the statutory scheme of Sections 401(f) and 401(g). It is our view that once a certificate has become effective, the Act requires that the Board resort to more formal—even though possibly more time-consuming—procedures to modify such a certificate, irrespective of whether the modification is entirely in the public interest.

Our holding is not based upon the fact that, prior to the date on which the certificate was modified, Delta inaugurated service authorized by the certificate. Furthermore, we have accepted, *arguendo*, the Board's argument that the language in the order quoted in footnote 4, supra, put Delta on notice that the Board purported to reserve to itself power to modify the certificate on the basis of matters set forth in the filed petitions for reconsideration.

We hold that under Sections 401(f) and 401(g) of the Federal Aviation Act, absent fraud, misrepresentation or clerical error in the original issuance of the certificate, it is only in a proceeding satisfying the requirements of Section 401 (g) that an effective certificate authorizing unrestricted service may be modified by subsequently imposed restrictions.

Orders No. E–13835, E–14044, and E–14224 are set aside to the extent that they impose restrictions on the certificate of Delta Air Lines, Inc., which became effective on December 5, 1958.

date of its order *approving the transfer* of a certificate, imposed labor protective conditions upon the transfer. The Board's power relative to the transfer of certificates is governed by Section 401 (h), 49 U.S.C.A. § 1371(h) rather than Sections 401(f) and 401(g). Under Part II of the Interstate Commerce Act, the Supreme Court has stated that the Commission's power to amend an order approving the transfer of a certificate is more flexible than its power to amend a certificate. United States v. Rock Island Motor Transit Co., 1951, 340 U.S. 419, 445–46, 71 S.Ct. 382, 95 L.Ed. 391, re-

hearing denied 341 U.S. 906, 71 S.Ct. 609, 95 L.Ed. 1344. In addition, Western Air Lines involved misrepresentation in testimony before the Board. There is language in Smith Bros., Revocation of Certificate, 33 MCC 465, (1942) indicating that if a certificate has been obtained as a result of misrepresentation it may be revoked without a formal proceeding under Section 212(a), 49 U.S.C.A. § 312 (a).

12. We suggest, however, that the Board investigate the possibility of issuing some form of temporary authorization.