259 F.2d 808
 104 U.S.App.D.C. 78
 FRONTIER AIRLINES, INC., Petitioner,
v.
CIVIL AERONAUTICS BOARD, Respondent, Bonanza Air Lines,
Inc., Western Air Lines, Inc., City of Phoenix, Arizona,
City and County of Denver, Colorado, The Town of Farmington,
New Mexico, et al., Intervenors.
 No. 14232.
 United States Court of Appeals District of Columbia Circuit.
 Argued April 21, 1958.
Decided June 26, 1958, Petition for Rehearing Denied Aug. 20, 1958.
 
 Mr. Jerrold Scoutt, Jr., Washington, D.C., with whom Messrs. Harry A. Bowen, Raymond J. Rasenberger and Scott C. Whitney, Washington, D.C., were on the brief, for petitioner.
 Mr. O. D. Ozment, Asst. Gen. Counsel, Litigation and Research, Civil Aeronautics Bd., with whom Mr. Franklin M. Stone, Gen. Counsel, Civil Aeronautics Bd., Mr. John H. Wanner, Associate Gen. Counsel, Civil Aeronautics Bd., and Mr. Daniel M. Friedman, Atty., Dept. of Justice, Washington, D.C., were on the brief, for respondent.
 
 
 1
 Mr. William C. Burt, Washington, D.C., with whom Messrs. Robert Matthew Beckman and Albert F. Grisard, Washington, D.C., were on the brief, for intervenor Bonanza Air Lines, Inc.,Mr. James F. Bell, Washington, D.C., with whom Messrs. L. Welch Pogue, Philip A. Fleming, Washington, D.C., and John W. Simpson, Los Angeles, Cal., were on the brief, for intervenor Western Air Lines, Inc.
 
 
 2
 Mr. Berl I. Bernhard, Washington, D.C., for intervenor City of Phoenix, Ariz. Messrs. James M. Verner and William O. Turney, Washington, D.C., were on the brief for intervenor City of Phoenix, Ariz.
 
 
 3
 Mr. Brackley Shaw, Washington, D.C., for intervenor Town of Farmington, New Mex., and certain other intervenors.
 
 
 4
 Messrs. Gerald G. Schulsinger and James L. Kaler, Washington, D.C., entered appearances for intervenor City and County of Denver, Colo.
 
 
 5
 Before PRETTYMAN, Circuit Judge, MADDEN, Judge, United States Court of Claims,[1] and FAHY, Circuit Judge.
 
 
 6
 PRETTYMAN, Circuit Judge.
 
 
 7
 This is a petition to review orders of the Civil Aeronautics Board awarding two airline routes. The facts, being in large part geographical and in large part economic, are difficult to state or to summarize.
 
 
 8
 The City of Phoenix, Arizona, petitioned the Board for improved air service, having in mind its 'expanding economy as one of the leading tourist, industrial, educational, cultural, governmental and agricultural centers in the Southwest'. It was particularly interested in service to and through Denver and Salt Lake City, and to Los Angeles. A number of airline companies applied for a certificate to render the increased service. The Board set the matter for comparative hearing.
 
 
 9
 As of that time the situation, in broad general outline, was that Bonanza Air Lines, Inc., a comparatively small carrier, served a route with several stops between Reno and Phoenix and between Phoenix and Los Angeles-San Diego; Frontier Airlines, Inc., a somewhat larger carrier, served routes north and south from near the Canadian border to near the Mexican border, through such cities as Billings, Salt Lake, Phoenix and Albuquerque, and it operated a many-stop route between Denver and Phoenix; Western Air Lines, Inc., is a trunk-line extending west from Minneapolis-St. Paul to the coast through Salt Lake City and Denver, and also extending north along the Rockies to Calgary and Edmonton. There were other applicants for the new Phoenix service. The Board awarded Western the Denver-Phoenix through route, with an added segment to San Diego, awarded Bonanza the Salt Lake-Phoenix route, and amended Frontier's six-stop Denver-Phoenix certificate to permit two-stop flights.
 
 
 10
 Many considerations pro and con were discussed in the examiner's report and in the decision of the Board, but basically the award of the non-stop certificate for the Denver route was because Western was a trunk-line and the needs of this traffic were for trunk-line service; the award of the Los Angeles segment was because Phoenix needed that service and the traffic to the Northwest was principally trunk-line; the award to Bonanza was because it was in the field and it needed this strengthening.
 
 
 11
 The Commission itself discussed in its original opinion only those points upon which it disagreed with the examiner; otherwise it adopted his findings and conclusions, attaching them as an appendix to its opinion. It discussed in detail its award of a multi-stop route between Salt Lake City and Phoenix and amply supported its conclusion. This called for a local service carrier. The Board was of opinion that the direct route and the multi-stop route should be operated by the same carrier, thus permitting economies. The Board pointed out that to Western this would represent a stub-end turnaround operation and also would divert revenue from a small local carrier. As between Frontier and Bonanza the Board found a more difficult choice. It concluded that this route offered one of the few remaining opportunities to strengthen Bonanza, that Bonanza had a superior claim in terms of historic participation in the traffic, and that Bonanza had a greater stake in the award than had Frontier. The Board recognized and described some factors favoring Frontier. On balance it concluded that the public interest, convenience and necessity required the award to Bonanza.
 
 
 12
 The Board discussed the San Diego segment and the Phoenix-Denver local service.
 
 
 13
 In a later order, upon the motions for reconsideration, the Board did reconsider in detail (the opinion is 32 pages long in the Joint Appendix) many of the contentions presented to it, and it also amended its award to Western so as to provide a Phoenix-Los Angeles route for traffic bound from Phoenix to Portland or Seattle.
 
 
 14
 Frontier, upon its present petition, says the Board did not grant adequate comparative consideration in respect to the Phoenix-Salt Lake route; the Board erred in considering the need for 'beyond area service' in respect to the San Diego and Los Angeles segments; the award of a Los Angeles segment nullified the earlier San Diego segment; the order on reconsideration is a nullity because it was rendered after the petition for judicial review had been filed and after the certificates previously issued had become effective; and, if that order is a nullity, the basic order is also a nullity because it fails to cover certain points.
 
 
 15
 We have examined all these points. The comparative consideration of Bonanza and Frontier seems to us to have been thorough; the evidence was extensive, and the findings and conclusions were clearly stated and reasonable. We cannot substitute our own evaluation of comparative factors for the evaluation by the Board, so long as the Board's processes and conclusions meet the wellestablished requirements.
 
 
 16
 Frontier reasons that but for the 'beyond area traffic' the west coast segments would not have been awarded and that but for those segments Western would not have been awarded the Denver-Phoenix non-stop certificate. It does not question the pertinence of beyond area traffic to the selection of the carrier to be certificated but challenges its use in the determination of the need for the route itself. The Board points out that the beyond area service needs were in issue and relied on by all parties. It urges, correctly we think, that the Board did not exceed its statutory authority in relying upon such material. We have at least twice[2] referred to the fact that any extension of a route involves service from back of the prior terminal. Where a single city (Phoenix in this case) is added to an existing route, service to points beyond the take-off point is necessarily involved. The Board points to many instances in which it has considered beyond area benefits in determining whether the public interest requires the route sought. Without elaborating these contentions it is sufficient to say that we think the needs of beyond area traffic may in many factual situations be a proper concern in the problem of establishing new air routes. In many situations we do not see how it could be otherwise. The concern was present in the Denver Service Case[3] and in North American Airlines.[4] The presence of the problem does not impinge upon the Ashbacker doctrine.
 
 
 17
 We do not find the order denying reconsideration invalid because rendered after this petition was filed. No harm was done. Had the Board been of a mind to grant reconsideration, it could have so indicated and a motion to remand would have been in order.
 
 
 18
 Affirmed.
 
 
 
 [1]
 Sitting by designation pursuant to the provisions of Sec. 291(a), Title 28, U.S.Code
 
 
 [2]
 Eastern Air Lines v. Civil Aeronautics Board, 100 U.S.App.D.C. 184, 243 F.2d 607 (1957); United Air Lines v. Civil Aeronautics Board, 97 U.S.App.D.C. 42, 228 F.2d 13 (1955)
 
 
 [3]
 United Air Lines v. Civil Aeronautics Board, supra note 1
 
 
 [4]
 North American Airlines v. Civil Aeronautics Board, 99 U.S.App.D.C. 55, 237 F.2d 209 (D.C.Cir.1956)