## CIVIL AERONAUTICS BOARD *v.* DELTA AIR LINES, INC.

No. 492.   Argued April 27, 1961.—Decided June 12, 1961.*

*John F. Davis* argued the cause for petitioner in No. 492.   On the briefs were former *Solicitor General Rankin, Solicitor General Cox, Assistant Attorney General Loevinger, Assistant Attorney General Bicks, Richard A. Solomon, Irwin A. Seibel, O. D. Ozment* and *Franklin M. Stone.*

*Together with No. 493, *Lake Central Airlines, Inc.,* v. *Delta Air Lines, Inc.,* also on certiorari to the same Court.

*Albert F. Grisard* argued the cause and filed a brief for petitioner in No. 493.

*R. S. Maurer* argued the cause for respondent. With him on the briefs were *James W. Callison* and *Robert Reed Gray.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

This case concerns the power of the Civil Aeronautics Board to alter a certificate of public convenience and necessity, granted to respondent Delta Air Lines, after that certificate had become effective under § 401 (f) of the Federal Aviation Act of 1958. 72 Stat. 731, 755, 49 U. S. C. § 1371 (f).[1] The administrative proceedings from which the present dispute arises date back to May 1955, and involve consideration by the Board of a number of applications for new service between cities located in an area extending from the Great Lakes to Florida. The Board divided the proceedings into two general categories, consolidating the applications for long-haul service in the

_____

[1] This section provides:

"Each certificate shall be effective from the date specified therein, and shall continue in effect until suspended or revoked as hereinafter provided, or until the Board shall certify that operation thereunder has ceased, or, if issued for a limited period of time under subsection (d) (2) of this section, shall continue in effect until the expiration thereof, unless, prior to the date of expiration, such certificate shall be suspended or revoked as provided herein, or the Board shall certify that operations thereunder have ceased: *Provided,* That if any service authorized by a certificate is not inaugurated within such period, not less than ninety days, after the date of the authorization as shall be fixed by the Board, or if, for a period of ninety days or such other period as may be designated by the Board any such service is not operated, the Board may by order, entered after notice and hearing, direct that such certificate shall thereupon cease to be effective to the extent of such service."

*Great Lakes-Southeast Service Case* and those for short-haul flights in the *Great Lakes Local Service Investigation Case*. In order to protect fully the interests of local service carriers, the Board allowed these carriers, including petitioner Lake Central Airlines, to intervene in the hearings on the long-haul applications.

At the conclusion of the *Great Lakes-Southeast Service Case* a number of awards were made, including one permitting Delta to extend an existing route northwest so as to provide service from Miami to Detroit and to add Indianapolis and Louisville as intermediate points on its existing Chicago-to-Miami route. Certain restrictions for the protection of local carriers were imposed on many of the awards, these restrictions generally providing that flights between specified intermediate cities had to originate at or beyond given distant points. The stated purpose of these restrictions was to prevent the long-haul carrier from duplicating so-called "turn-around" service already provided by existing local carriers. One such restriction was applied to Delta's run between Detroit and various locations in Ohio but, by and large, Delta's award was free of protective limitations.

The Board's order issued on September 30, 1958, and it specified that Delta's certificate was to become effective on November 29, 1958, unless postponed by the Board prior to that date. Shortly thereafter, within time limits set by the Board,[2] numerous petitions for reconsideration

---

[2] The Board's regulations concerning petitions for reconsideration, 14 CFR § 302.37, provide in part that:

"*Petition for reconsideration*—(a) *Time for filing.* A petition for reconsideration, rehearing or reargument may be filed by any party to a proceeding within thirty (30) days after the date of service of a final order by the Board in such proceeding unless the time is shortened or enlarged by the Board, except that such petition may not be filed with respect to an initial decision which has become final through

were filed, including one by Lake Central protesting the breadth of Delta's certificate. Lake Central requested that, if the Board should be unable to decide its petition for reconsideration before November 29, the effective date of the certificate be put off. On November 28, one day before Delta's certificate was to become effective, the Board issued a lengthy memorandum and order, which stated in substance that the requests for stays, with one immaterial exception, were denied, but that judgment on the merits of the petitions for reconsideration would be reserved. The Board explained that the parties had not made a sufficient showing of error to justify postponements and that, in view of the advent of the peak winter season, further delay would be particularly inappropriate; the Board then said:

> "To the extent that we have considered the petitions for reconsideration in the present order we have done so only for the purposes of assessing the probability of error in our original decision. We feel that such action is necessary to a fair consideration of the stay requests, and is in no way prejudicial to the legal rights of those parties seeking reconsideration. Nothing in the present order forecloses the Board from full and complete consideration of the pending petitions for reconsideration on their merits."

failure to file exceptions thereto. However, neither the filing nor the granting of such a petition shall operate as a stay of such final order unless specifically so ordered by the Board. After the expiration of the period of filing a petition, a motion for leave to file such petition may be filed; but no such motion shall be granted except on a showing of unusual and exceptional circumstances, constituting good cause for failure to make timely filing. Within ten (10) days after a petition for reconsideration, rehearing, or reargument is filed, any party to the proceeding may file an answer in support of or in opposition to the petition."

For reasons not presently pertinent, Delta's certificate became effective on December 5,[3] rather than November 29, 1958, and Delta commenced its newly authorized operations shortly thereafter. On May 7, 1959, the Board issued a new order disposing of the still-pending petitions for reconsideration. By this order, the Board amended Delta's certificate in response to the restrictions proposed by Lake Central. Specifically, the Board barred Delta's operations between ten pairs of intermediate cities unless the flights initiated at Atlanta or points farther south; the effect of this order was to bar certain flights Delta was then operating. Even then, the Board's action was not final; the Board reserved the power to lift these restrictions pending the outcome of the *Great Lakes Local Service Case*.[4] The Board's disposition of the petitions was taken summarily, without formal notice to the parties or the opportunity for a hearing prior to decision.

Delta sought review of this order before the Board, challenging the Board's power to change the terms of its certificate after the effective date thereof without notice or hearing. The Board overruled Delta's objection, stating that: "[W]e believe we have such power, and we have exercised it in the past. Moreover, there is no showing, and we are unable to conclude, that any significant adverse effect will result to either Delta or the public from observance of the conditions here involved." On review in the Court of Appeals for the Second Circuit, however,

---

[3] A temporary stay was granted from November 29 to December 5 to enable the Court of Appeals to consider a request by Eastern Air Lines for a judicial stay of certain awards made in the original proceeding. Eastern did not get its stay nor was its challenge on the merits upheld. *Eastern Air Lines* v. *Civil Aeronautics Board*, 271 F. 2d 752.

[4] We are informed that this case has now been completed but no further action has been taken on Delta's restrictions.

the Board's order was overturned, the court reasoning that Congress had made notice and hearing a prerequisite to the exercise of the Board's power to change an existing certificate. *Delta Air Lines, Inc.,* v. *Civil Aeronautics Board,* 280 F. 2d 43.

The issue in this case is narrow and can be stated briefly: Has Congress authorized the Board to alter, without formal notice or hearing, a certificate of public convenience and necessity once that certificate has gone into effect? If not, should it make any difference that the Board has purported to reserve jurisdiction prior to certification to make summary modifications pursuant to petitions for reconsideration? We think that both these questions must be answered in the negative.

Whenever a question concerning administrative, or judicial, reconsideration arises, two opposing policies immediately demand recognition: the desirability of finality, on the one hand, and the public interest in reaching what, ultimately, appears to be the right result on the other.[5] Since these policies are in tension, it is necessary

---

[5] See Tobias, Administrative Reconsideration: Some Recent Developments in New York, 28 N. Y. U. L. Rev. 1262, where the author observed:

"Re-examination and reconsideration are among the normal processes of intelligent living. Admittedly no warranty of correctness or fitness attaches to a decision or an action simply because it is a thing of the past. Every-day experience teaches the contrary: while the choice first made may well remain the course ultimately followed, often enough it is found on further consideration to require revision. On the other hand, constant re-examination and endless vacillation may become ludicrous, self-defeating, and even oppressive. Whether for better or for worse so far as the merits of the chosen course are concerned, a point may be reached at which the die needs to be cast with some 'finality.' An opposition may thus develop between the right result and the final one."

See also the statement of the Board in its original opinion in this case, denying a motion to reopen the record:

"Our general policy with respect to motions to reopen the record for receipt of data on the most recent operating experience has

to reach a compromise in each case and petitioners have argued at length that the Board's present procedure is a happy resolution of conflicting interests. However, the fact is that the Board is entirely a creature of Congress and the determinative question is not what the Board thinks it should do but what Congress has said it can do. See *United States* v. *Seatrain Lines,* 329 U. S. 424, 433. Cf. *Delta Air Lines* v. *Summerfield,* 347 U. S. 74, 79–80. This proposition becomes clear beyond question when it is noted that Congress has been anything but inattentive to this issue in the acts governing the various administrative agencies. A review of these statutes reveals a wide variety of detailed provisions concerning reconsideration, each one enacted in an attempt to tailor the agency's discretion to the particular problems in the area.[6] In this respect, the Federal Aviation Act is no exception since, in § 401 (f) and (g) of the Act, Congress has stated the limits of the Board's power to reconsider in unequivocal terms. Section 401 (f) provides that "Each certificate shall be effective from the date specified therein, and shall continue in effect until suspended or revoked as herein-

consistently reflected the requirement of the public interest that the record in major route cases be brought to a close as expeditiously as possible, consistent with the requirements of full hearings; so that final decision may be rendered promptly. Institution of needed new services could be endlessly delayed were we to permit the record to be reopened in the final procedural stages of a case for the submission of more recent operating data (and the attendant cross-examination and exchange of rebuttal evidence). Only in the cases where the situation under consideration has changed radically would such a course of action be justified."

[6] Generally speaking, the less interested Congress has been in what has been called "security of certificate," the wider the scope of reconsideration Congress has allowed to the supervising agency. See generally Davis, Res Judicata in Administrative Law, 25 Texas L. Rev. 199. It cannot be doubted that Congress was powerfully interested in "security of certificate" when it passed the Aviation Act. See 83 Cong. Rec. 6407.

after provided." The phrase "as hereinafter provided" refers to § 401(g), which states:

"AUTHORITY TO MODIFY, SUSPEND, OR REVOKE

"(g) *The Board upon petition or complaint or upon its own initiative, after notice and hearings, may alter, amend, modify, or suspend any such certificate, in whole or in part, if the public convenience and necessity so require,* or may revoke any such certificate, in whole or in part, for intentional failure to comply with any provision of this title or any order, rule, or regulation issued hereunder or any term, condition, or limitation of such certificate: *Provided,* That no such certificate shall be revoked unless the holder thereof fails to comply, within a reasonable time to be fixed by the Board, with an order of the Board commanding obedience to the provision, or to the order (other than an order issued in accordance with this proviso), rule, regulation, term, condition, or limitation found by the Board to have been violated. Any interested person may file with the Board a protest or memorandum in support of or in opposition to the alteration, amendment, modification, suspension, or revocation of the certificate." (Emphasis added.)

This language represents to us an attempt by Congress to give the Board comprehensive instructions to meet all contingencies and the Board's duty is to follow these instructions,[7] particularly in light of the fact that obedience thereto raises no substantial obstacles. It is true, of course, that statutory language necessarily derives much of its meaning from the surrounding circumstances. However, we think that, while there is no legislative his-

---

[7] No one contends that the changes made upon reconsideration constituted the correction of inadvertent errors. See *American Trucking Assns., Inc.,* v. *Frisco Transportation Co.,* 358 U. S. 133.

tory directly on point, the background of the Aviation Act strongly supports what we believe to be the plain meaning of § 401 (f) and (g). It is clear from the statements of the supporters of the predecessor of the Aviation Act—the Civil Aeronautics Act of 1938—that Congress was vitally concerned with what has been called "security of route"—*i. e.,* providing assurance to the carrier that its *investment in operations* would be protected insofar as reasonably possible.[8] And there is no other explanation but that Congress delimited the Board's power to reconsider its awards with precisely this factor in mind; hence the language that a certificate *"shall be effective . . .*

[8] Speaking on behalf of the bill which became the predecessor of the Federal Aviation Act—the Civil Aeronautics Act of 1938—Congressman Lea, Chairman of the Committee on Interstate and Foreign Commerce which reported the bill, said:

"One hundred and twenty million dollars has already been invested in commercial aviation in the United States. It is the information of the committee that $60,000,000 of this sum has been wiped out. The fact that so much money has been put into commercial aviation shows the faith, the genius, and the courage of the American people in that they are willing to invest as they have in aviation up to this date. However, in the absence of legislation such as we have now before us these lines are going to find it very difficult if not impossible to finance their operations because of the lack of stability and assurance in their operations. You would not want to invest $200 or $2,000 a mile in a line that has no assurance of security of its route and no protection against cutthroat competition.

"Part of the proposal here is that the regulatory body created by the bill will have authority to issue certificates of convenience and necessity to the operators. This will give assurance of security of route. The authority will also exercise rate control, requiring that rates be reasonable and giving power to protect against cutthroat competition. In my judgment, those two things are the fundamental and essential needs of aviation at this time, security and stability in the route and protection against cutthroat competition.

"These are the two economic fundamentals presented and it is this necessity that the bill seeks to meet. We want to give financial stability to these companies so they can finance their operations and finance them to advantage." 83 Cong. Rec. 6406–6407.

until suspended or revoked as hereinafter provided" (emphasis supplied), language which is absent from several of the Acts to which reference has been made. Thus, the structure of the statute, when considered in light of the factor persuading Congress, indicates to us that the critical date in the mind of Congress was the date on which the carrier commenced operations, with the concomitant investment in facilities and personnel, not the date that abstract legal analysis might indicate as the "final" date. In other words, it seems clear to us that Congress was relatively indifferent to the fluctuations an award might undergo prior to the time it affected practical relationships, but that Congress was vitally concerned with its security after the wheels had been set in motion. In light of this, we think the result we reach follows naturally: to the extent there are uncertainties over the Board's power to alter effective certificates, there is an identifiable congressional intent that these uncertainties be resolved in favor of the certificated carrier and that the specific instructions set out in the statute should not be modified by resort to such generalities as "administrative flexibility" and "implied powers." We do not quarrel with those who would grant the Board great discretion to conjure with certificates prior to effectuation. But, we feel that we would be paying less than adequate deference to the intent of Congress were we not to hold that, after a certificate has gone into effect, the instructions set out in the statute are to be followed scrupulously.

However, petitioners argue that there is an implied exception to the statutory mandate when the Board, pursuant to a petition for reconsideration filed before the certificate's effective date, makes a statement that the certificate is subject to later amendment after further deliberation upon the petition. Petitioners admit that there is no express statutory authority for the Board to entertain

petitions for reconsideration even prior to the effective date of the certificate, but they assert, and we assume *arguendo* they are correct, that the Board has implied power to accept such petitions. This being the case, petitioners claim that the existence of an outstanding petition for reconsideration gives a double meaning to the term "effective" as used in the Act: certificates are "effective" on the date specified therein for the purpose of allowing the certificated carrier to commence operations, but they are not "effective" as the term is used in § 401 (f) so as to preclude modification outside the procedures specified in § 401 (g).

The appeal of this argument comes, in the main, from the general notion that an administrative order is not "final," *for the purposes of judicial review,* until outstanding petitions for reconsideration have been disposed of. See, *e. g., Outland* v. *Civil Aeronautics Board,* 109 U. S. App. D. C. 90, 284 F. 2d 224; *Braniff Airways, Inc.,* v. *Civil Aeronautics Board,* 79 U. S. App. D. C. 341, 147 F. 2d 152. Once it is established that the certificate is not "final" for one purpose, the argument runs, then it is logical to assume that the certificate lacks "finality" for another. The difficulties with this line of reasoning, however, are many. First, insofar as it is bottomed on cases such as *Outland* and *Braniff,* the argument relies on holdings that were never made. The Courts of Appeals in these cases decided only that petitions for review were timely if filed in time from the date on which the Board disposed of pending petitions for reconsideration; the question whether the Board's action on the petitions for reconsideration should have been taken after notice and hearing did not arise. Furthermore, petitioners' argument skips an important logical step; it assumes, without explanation, that questions of administrative finality present the same problems, and therefore deserve the same solutions, as questions concerning the timeliness of an appeal.

In point of fact, this assertion is not only unsupported but erroneous. The pertinent statutory language is not similar in the two instances,[9] and the other points under analysis are different. Thus, a court considering the timeliness of a litigant's appeal is concerned with the wisdom of exercising its own power to act, and the result depends on such factors as fairness to the appellant and the intent of Congress in passing a general statute—§ 10 (c) of the Administrative Procedure Act—which applies equally to almost all administrative agencies. There is no call, as *Outland* and similar cases illustrate by their omissions, for considering either the sections of a particular act which are not concerned with appellate review or the problem—which at that point is of historical interest only—whether the petition for reconsideration should have been decided summarily or after notice and hearing. One might argue, of course, that the question is similar in both instances because, if the Board's action on the petition for reconsideration is too late, then an appeal which is timely only from the Board's action on reconsideration is also too late. However, this line of reasoning overlooks the confines of the result we are reaching in this case. We are not saying that the Board cannot entertain petitions for reconsideration after effective certification, nor are we holding that such petitions cannot be *denied* summarily; all we hold is that the petitions cannot be granted and the certificated carrier's operations curtailed without notice or hearing. Therefore, since the cases such as *Outland* concerned the denial of a petition for reconsideration, there is no conflict, express or implied, between those decisions and this one.[10] In this

---

[9] The "finality" of an order for purposes of judicial review depends on § 10 (c) of the Administrative Procedure Act, 60 Stat. 243, 5 U. S. C. § 1009 (c). See 6 Stan. L. Rev. 531.

[10] In addition to the reasons mentioned in the text, those cases involving orders, rather than certificates—see *Western Air Lines* v. *Civil Aeronautics Board,* 194 F. 2d 211—are distinguishable for the

connection, the statement of a leading commentator seems particularly pertinent:

> . "The tendency to assume that a word which appears in two or more legal rules, and so in connection with more than one purpose, has, and should have precisely the same scope in all of them runs all through legal discussions. It has all the tenacity of original sin and must constantly be guarded against." Cook, The Logical and Legal Bases of the Conflict of Laws, 159.[11]

Thirdly, were we to adopt the position urged by petitioners, we would have to hold that, in the words of a former chairman of the Board, the power to reconsider a case may be the lever for "nullify[ing] an express provision of the Act." Ryan, The Revocation of an Airline Certificate of Public Convenience and Necessity, 15 J. Air L. & Comm. 377, 384. As Commissioner Ryan indicated, the power the Board asks for in this case seems nothing more or less than the power to do indirectly what it cannot do directly. Parenthetically, it should be noted that, for purposes of this dispute, it is difficult to draw a distinction between a petition for reconsideration filed by a party and one initiated by the Board *sua sponte*. *Sprague* v. *Woll*, 122 F. 2d 128. This being the case, it is all the more significant that the Court in *United States* v. *Seatrain Lines*, 329 U. S. 424, while overruling the Interstate

---

reasons stated in *Seatrain, supra,* at 432. Similarly, the cases involving certificates under the Federal Communications Act are distinguishable for the reasons stated by Commissioner Ryan. See Ryan, The Revocation of an Airline Certificate of Public Convenience and Necessity, 15 J. Air L. & Comm. 377, 384–385.

[11] See also Hancock, Fallacy of the Transplanted Category, 37 Can. B. Rev. 535. One might argue, of course, that judicial review and administrative reconsideration are the same since both threaten a reversal of the prior award. However, Congress has shown no intent to preclude reconsideration, either judicial or administrative, after notice and hearing.

Commerce Commission's contention that it had inherent power to reconsider effective certificates, paid no attention to the fact that the Commission had made the original certificate effective, subject "to such terms, conditions, and limitations as are now, or may hereafter be, attached to the exercise of such authority by this Commission."

Although we feel that the language and background of the statute are sufficiently clear so that affirmance can rest solely on that basis, it seems appropriate, in light of petitioners' vigorous assertion that policy reasons compel their result, to discuss some of the ramifications of our decision. In the first place, it bears repetition that we are *not* deciding that the Board is barred from reconsidering its initial decision. All we hold is that, if the Board wishes to do so, it must proceed in the manner authorized by statute. Thus, for example, the Board may reconsider an effective certificate at any time if it affords the certificated carrier notice and hearing prior to decision; or, if it feels uncertain about the decision prior to its effective date, it may postpone the effective date until all differences have been resolved; and, if neither of these procedures seem practical in a given case, the Board may issue a temporary certificate set to expire on the date the Board prescribes for re-examination.[12]

---

[12] Although the Board did not purport to issue a temporary certificate as prescribed in § 401 (d) (2), petitioners now argue that the Board's action was "equivalent" to a temporary certification. However, we do not find this proposition persuasive. As stated in the text, *supra*, we think that the Board must bow to the statutory procedure and cannot take short cuts. See note 15, *infra*. Moreover, the most natural reading of § 401 (d) (2)—which says that temporary certificates may be issued for "limited periods"—is that Congress was authorizing the Board to issue certificates running until a specified date. One reason for this construction is obvious; if a temporary certificate had unlimited duration, only subject to immediate revocation when the Board got around to considering various objections, it might play havoc with the ability of the carrier to accept

Indeed, with all these weapons at its command, it is difficult to follow the argument that the Board should be allowed to improvise on the powers granted by Congress in order to preserve administrative flexibility.

Furthermore, it would seem that any realistic appraisal of the relative hardships involved in this case cuts in favor of the respondent. To be sure, the Board may be able to act quicker under the rule it espouses and, by eliminating the necessity of a new hearing, Lake Central will be spared the expense of preparing a new record. However, were the Board correct, respondent would be subjected to the loss of valuable routes, routes it had already begun to operate after considerable initial investment, without being heard in opposition. The Board points out that respondent had notice that the Board had reserved the right to amend the certificate. But it is not clear what comfort respondent could take from such notice; respondent could not hedge, since § 401 (f) of the Act provides that a certificated carrier may lose the right to conduct any service it does not initiate within 90 days of certification. Concededly, the fact of notice gives considerable surface appeal to petitioners' assertions; they can and do argue that respondent knew what it was getting into and should not be heard to complain when the gamble turns out unfavorably. However, it must be remembered that the problem is not presented to us in the abstract; we are dealing with it in the context of this

advance reservations. Just such a contention was made by Delta before the Board in its petition for a stay of the Board's May 7, 1959, order on reconsideration. Delta pointed out:

"It is a fact that schedules for May and June, and timetables showing this early morning Chicago-Indianapolis-Evansville and Evansville-Indianapolis-Chicago service, have been released to the public and many reservations have been booked for these months. Furthermore, pilot bidding procedures and problems involving equipment rotation prohibit the immediate cancellation of this flight on short notice."

particular statute. And, as stated above, a major purpose behind the enactment of the Aviation Act was to eliminate the element of risk from a carrier's operations. With Congress on record as affirmatively desiring to eliminate the necessity of gambling, we do not feel that the "assumption of the risk" argument carries much weight. The Board also argues that respondent "in substance" enjoyed the hearing contemplated by § 401 (g) because the matters impelling the Board to change its mind were matters that had been thrashed out during the hearings on the original certificate. However, this contention assumes a fact that we do not have before us—that a hearing would not have disclosed any further evidence or, perhaps more importantly, any post-certification events weighty enough to alter the Board's thinking.[13]

In short, our conclusion is that Congress wanted certificated carriers to enjoy "security of route" so that they might invest the considerable sums required to support their operations; and, to this end, Congress provided certain minimum protections before a certificated operation could be cancelled. We do not think it too much to ask that the Board furnish these minimum protections as a matter of course, whether or not the Board in a given

---

[13] It appears clear, and the Board does not disagree, that the "hearing" specified in § 401 (g) means a "hearing" *prior* to decision. And, the Board does not contend that this requirement could have been satisfied by the allowance of a hearing *after* the decision on reconsideration was handed down. This course of action seems wise since (1) it is generally accepted on both principle and authority that a hearing after decision, although permissible in special circumstances, is not the equivalent of a predetermination hearing, see, *e. g.,* Gelhorn and Byse, Administrative Law, 774; (2) it is not entirely clear that Delta could have procured a hearing after the Board's decision. Delta sought a stay of the Board's May 7 order until after the *Great Lakes Local Service Investigation Case* was decided, presumably with a view to introducing further evidence on the present point in that case; the request for a stay was denied.

case might think them meaningless. It might be added that some authorities have felt strongly enough about the practical significance of these protections to suggest that their presence may be required by the Fifth Amendment. See *Seatrain Lines* v. *United States,* 64 F. Supp. 156, 161; *Handlon* v. *Town of Belleville,* 4 N. J. 99, 71 A. 2d 624; see also 63 Harv. L. Rev. 1437, 1439.

Petitioners' final argument is that their position is supported by consistent administrative construction and analogous case authority. The administrative construction argument appears less than substantial in light of the fact that, on the last and, it appears, only occasion when the present question was expressly considered, the Board said in dictum that it had "grave doubts" about proceeding in the manner followed in this case. *Kansas City-Memphis-Florida Case,* 9 C. A. B. 401; [14] cf. *Smith Bros., Revocation of Certificate,* 33 M. C. C. 465. See generally Ryan, *supra,* where Commissioner Ryan went to great lengths to expose what he felt were the fallacies in the contentions now advanced by petitioners. With respect to prior cases, petitioners again are unable to cite any holdings on point. Petitioners rely heavily on *Frontier Airlines, Inc.,* v. *Civil Aeronautics Board,* 104 U. S. App. D. C. 78, 259 F. 2d 808, but the dispute here involved was not raised in that case. The closest analogy in *Frontier*

---

[14] Since *Kansas City,* the Board has reconsidered an effective award on three occasions. *United Western, Acquisition of Air Carrier Property,* 11 C. A. B. 701; *Service to Phoenix Case,* Order E-12039 (1957); *South Central Area Local Service Case,* Order E-14219 (1959). *United Western* did not involve a certificate of public convenience and necessity and, thus, has no relevance. See note 10, *supra. Service to Phoenix* involved a denial of reconsideration except on one point, which might arguably be termed the correction of inadvertent error. See note 7, *supra. South Central* did involve the alteration of a certificated carrier's rights. As stated, the present point was not raised in any of these three cases.

is to the argument put forward by a party whose petition for reconsideration had been *denied;* and the Court of Appeals reported this argument and the reasons for overruling it as follows:

> "[T]he order on reconsideration is a nullity because it was rendered after the petition for judicial review had been filed and after the certificates previously issued had become effective; and, if that order is a nullity, the basic order is also a nullity because it fails to cover certain points.
>
> .        .        .        .        .
>
> "We do not find the order denying reconsideration invalid because rendered after this petition was filed. No harm was done. Had the Board been of a mind to grant reconsideration, it could have so indicated and a motion to remand would have been in order."

Perhaps more favorable to petitioners is this Court's decision in *United States* v. *Rock Island Motor Transport Co.,* 340 U. S. 419, where it was held that the Interstate Commerce Commission could modify a motor carrier's effective certificate pursuant to a reservation in the initial order. However, two important distinctions between that case and this are apparent: (1) the Motor Carrier Act makes express provision for summary modifications after certification, 49 U. S. C. § 308, and (2) the Court in *Rock Island* was very careful to limit its holding to the particular modification made in that case. Finally, the decision which is analytically most relevant to this case, *United States* v. *Seatrain Lines, supra,* furnishes support for respondent, rather than petitioners. While *Seatrain* may be distinguishable on its facts,[15] the Court spoke in

---

[15] The potentially distinguishing feature about *Seatrain* is that the Court's holding may rest on an alternate ground—*viz.:* that the Commission had no power to impose the conditions it did in the first instance. However, *Seatrain cannot* be distinguished on the grounds

general terms of the rule that supervising agencies desiring to change existing certificates must follow the procedures "specifically authorized" by Congress and cannot rely on their own notions of implied powers in the enabling act. In short, we do not find that prior authority clearly favors either side; however, to the extent that a broad observation is permissible, we think that both administrative and judicial feelings have been opposed to the proposition that the agencies may expand their powers of reconsideration without a solid foundation in the language of the statute. Therefore, since the language and background of the statute are against, rather than for, the Board, the judgment of the Court of Appeals must be

*Affirmed.*

MR. JUSTICE WHITTAKER, with whom MR. JUSTICE FRANKFURTER and MR. JUSTICE HARLAN join, dissenting.

This is an airline route proceeding brought before the Civil Aeronautics Board. The case involves the effect upon the proceeding, and hence upon a certificate of convenience and necessity ordered to be issued therein, of a timely motion for reconsideration.

---

that the Court said "the certificate, when finally granted and the time fixed for rehearing has passed, is not subject to revocation in whole or in part except as specifically authorized . . . ." The point is that, under the Water Carrier Act, the Commission had express authority to entertain petitions for reconsideration *at any time.* See 49 U. S. C. § 916 (a), incorporating 49 U. S. C. § 17 (6) and (7). Therefore, it is clear that the Commission in *Seatrain* could have reached with impunity the result it wanted to reach by following the procedures set out by Congress. The force of the *Seatrain* decision is, then, that the commissions and boards must follow scrupulously the statutory procedures before they can alter existing operations and that arguments to the effect that "this is just another way of doing it" will not prevail.

Specifically, the question presented is whether, in the light of the provisions of §§ 401 (f) and 401 (g) of the Federal Aviation Act,[1] the Board, by allowing its certificate to become "effective," notwithstanding a timely filed and unruled motion for reconsideration, lost all power to grant the motion and accordingly to modify its order and the resulting certificate.

This case is but a facet of a multi-party, highly complex and protracted route proceeding, known as the "Great Lakes-Southeast Service Case," commenced before the Civil Aeronautics Board in May 1955. It involved, "predominantly," the "long-haul" service needs of an area extending roughly between the Great Lakes and Florida. Numerous trunkline carriers sought new or additional operating rights in that area. The Board was also confronted with a number of petitions by local carriers for authority to provide new or improved short-haul service between certain intermediate cities in that area.

---

[1] Section 401 (f) of the Federal Aviation Act (72 Stat. 755–756, 49 U. S. C. § 1371 (f)) provides, in relevant part, as follows:

"(f) Each certificate shall be effective from the date specified therein, and shall continue in effect until suspended or revoked as hereafter provided, or until the Board shall certify that operation thereunder has ceased or, if issued for a limited period of time under subsection (d)(2) of this section, shall continue in effect until the expiration thereof, unless, prior to the date of expiration, such certificate shall be suspended or revoked as provided herein, or the Board shall certify that operations thereunder have ceased . . . ."

Section 401 (g) of the Act (72 Stat. 756, 49 U. S. C. § 1371 (g)) provides, in relevant part, as follows:

"(g) The Board upon petition or complaint or upon its own initiative, after notice and hearings, may alter, amend, modify, or suspend any such certificate, in whole or in part, if the public convenience and necessity so require, or may revoke any such certificate, in whole or in part, for intentional failure to comply with any provision of this title or any order, rule, or regulation issued hereunder or any term, condition, or limitation of such certificate . . . ."

In an effort to keep the proceeding within manageable bounds, the Board declined to consolidate those short-haul petitions with this case, and, instead, directed the institution of a separate proceeding (*Great Lakes Local Service Investigation*) for their resolution, but it did announce that, to make sure that this separation would not deprive them of an opportunity to be heard in protection of their rights, the local service carriers would be permitted to intervene in this case.

As one of the many contending trunkline carriers, respondent, Delta Air Lines, Inc., petitioned for authority (1) to extend an existing route northwesterly to provide service from Miami to Detroit, and (2) to add Indianapolis and Louisville as intermediate points on its existing Chicago-to-Miami route. Petitioner, Lake Central Airlines, Inc., a local or short-haul carrier operating a line between Chicago and Indianapolis, and also serving Louisville, intervened to object to the Delta petition unless its proposed new service to Indianapolis and Louisville be restricted to northbound flights originating, and to southbound flights terminating, at or south of Atlanta. Upon this issue, Lake Central offered evidence that it would suffer injury and damage, through diversion of its local traffic, by the proposed new Delta service unless it be so restricted.

On September 30, 1958, the Board filed its opinion and order in which, among other things, it authorized Delta to add Indianapolis and Louisville as intermediate points on its Chicago-to-Miami route, without imposing the restrictions that Lake Central had asked. Consistently with its custom, the Board stated in its order that the certificate thereby authorized to Delta would become effective on the 60th day after entry of the order (November 29).

Within the 30 days allowed by the Board's rule for the filing of a motion for reconsideration,[2] Lake Central filed with the Board on October 31, 1958, its motion for reconsideration, elaborating the grounds it had asserted and supported with evidence, in opposition to Delta's petition. It also asked in that motion that the effective date of the Delta certificate be stayed pending decision by the Board of the motion for reconsideration.

On November 28, 1958, one day prior to the date upon which, as stated in the Board's order of September 30, the Delta certificate would become effective, the Board filed a lengthy memorandum and order in which it denied Lake Central's request (and also—with one exception not material here—the similar requests of others) for a stay of the effective date of the Delta certificate until after the Board had decided Lake Central's motion for reconsideration. In that order, the Board expressed its view that "the parties [had] not made a sufficient showing of prob-

---

[2] Section 302.37 (a) of the Rules of Practice of the Civil Aeronautics Board, 14 CFR § 302.37 (a) (1956 Rev. ed.), provides, in relevant part, as follows:

"*Petition for reconsideration*—(a) *Time for filing.* A petition for reconsideration, rehearing or reargument may be filed by any party to a proceeding within thirty (30) days after the date of service of a final order by the Board in such proceeding unless the time is shortened or enlarged by the Board, except that such petition may not be filed with respect to an initial decision which has become final through failure to file exceptions thereto. However, neither the filing nor the granting of such a petition shall operate as a stay of such final order unless specifically so ordered by the Board. . . ."

In a recent revision of its Rules, the Board has reduced the time within which a petition for reconsideration may be filed from 30 to 20 days. See 14 CFR § 302.37 (1960 Supp.).

49 U. S. C. § 1486 (a) provides that decisions of the Board shall be subject to review by the Courts of Appeals upon petition "filed within sixty days after the entry of such order," by any person having a substantial interest in the order.

able legal error or abuse of discretion" to warrant the issuance of a stay, and that, in view of the approaching peak winter season, the "new services to Florida [were] immediately required."

Then, turning to the motions for reconsideration, the Board said in that order that, "because of the detailed matters raised in the petitions for reconsideration, it [would] not be possible to finally dispose of them until after November 29," but the Board promptly would "address itself to the merits of the petitions for reconsideration, and [its] order dealing with [those] matters [would] issue at a later date." It thus and otherwise made clear that its denial of the stays was not intended to be "[in any] way prejudicial to the legal rights of those parties seeking reconsideration." It concluded: "Nothing in the present order forecloses the Board from full and complete consideration of the pending petitions for reconsideration on their merits."

Thereafter, on May 7, 1959, the Board granted Lake Central's petition for reconsideration and accordingly entered its final order restricting Delta's service of Indianapolis and Louisville to northbound flights originating, and to southbound flights terminating, at or south of Atlanta; but the Board did say in that order that "If, after deciding the issues presented in the *Great Lakes Local Service* case, we conclude that the long-haul restrictions are not required, we will have full freedom to remove them at that time." It is this order that gives rise to the present controversy.

On Delta's appeal from that order, the United States Court of Appeals for the Second Circuit reversed. 280 F. 2d 43. It held that, notwithstanding the timely filed and unruled motion for reconsideration, "once [the Board allowed the] certificate [to] become effective," it lost all power thereafter to grant the motion and accordingly to modify its order and the resulting certificate, and that

"it is only in a [separate and plenary] proceeding satisfying the requirements of Section 401 (g) that an effective certificate authorizing unrestricted service may be modified by subsequently imposed restrictions." 280 F. 2d, at 48. Because of the importance of the question involved to the proper administration of the Act, we brought the case here. 364 U. S. 917, 918.

The Court now affirms that judgment. It does so upon grounds which, I am bound to say, with all respect, seem to me to be spurious and legally indefensible, as I shall endeavor to show.

Although the Federal Aviation Act does not expressly provide for motions for reconsideration by the Board of its orders, it is clear, and indeed it is agreed by the parties, that the Board has power to provide for, and to entertain, such motions, for "[t]he power to reconsider is inherent in the power to decide." *Albertson* v. *Federal Communications Comm'n,* 87 U. S. App. D. C. 39, 41, 182 F. 2d 397, 399. See also *Braniff Airways* v. *Civil Aeronautics Board,* 79 U. S. App. D. C. 341, 147 F. 2d 152.

Pursuant to that power, the Board adopted its Rule of Practice prescribing, in pertinent part, that "a petition for reconsideration, rehearing or reargument may be filed by any party to a proceeding within thirty (30) days after the date of service of a final order by the Board in such proceeding . . . ."[3] It is admitted that Lake Central filed its motion for reconsideration within the 30 days allowed by that rule.

Under every relevant reported decision, save one to be later noted, a timely motion for reconsideration, being an authorized and appropriate step in the proceeding, "operate[s] to retain the Board's authority over the [original] order," *Waterman S. S. Corp.* v. *Civil Aeronautics Board,* 159 F. 2d 828, 829 (C. A. 5th Cir.),

---

[3] See note 2.

"reopen[s] the case," *Black River Valley Broadcasts* v. *McNinch,* 69 App. D. C. 311, 316, 101 F. 2d 235, 240, and prevents the "proposed decision"—which, at that stage, is all it is (*Waterman* case, *supra,* at 828)—from becoming "final." *Outland* v. *Civil Aeronautics Board,* 109 U. S. App. D. C. 193, 284 F. 2d 224, 227. The proceeding being thus held open by the motion, and the Board having both the power and the duty to decide it, it would seem to be fundamental that the Board has power *to decide it either way*—including, of course, the "power to grant [it]," *Enterprise Co.* v. *Federal Communications Comm'n,* 97 U. S. App. D. C. 374, 378, 231 F. 2d 708, 712, as it did here.

It seems necessarily true, and is well settled by the cases, that "Where a motion for rehearing is in fact filed there is no final action until the rehearing is denied . . . [for] there is always a possibility that the order complained of will be modified in a way which renders judicial review unnecessary," *Outland* v. *Civil Aeronautics Board,* 109 U. S. App. D. C., at 93, 284 F. 2d, at 227, and "although the [motion] did not . . . supersede or suspend the order, [it did operate] to retain the Board's authority over the order, so that the order overruling the motion should be taken as the final . . . [order] intended by the statute to start the running of the sixty-day period for judicial review." *Waterman S. S. Corp.* v. *Civil Aeronautics Board, supra,* at 829. It necessarily follows that, if a timely motion for reconsideration is pending before the Board, its "proposed decision" (*id.,* at 828) has "not become final in the sense that it [is] no longer subject to change upon reconsideration," *Enterprise Co.* v. *Federal Communications Comm'n,* 97 U. S. App. D. C., at 378, 231 F. 2d, at 712, and "jurisdiction over [that] order remains with the [Board] until the time for appeal has expired, and that time is tolled by an application for rehearing." (*Ibid.*) Hence, "no [final] rights accrued to [Delta] as a result of the order originally granting [its] permit," *Black River Valley Broadcasts* v. *McNinch,* 69

App. D. C., at 316, 101 F. 2d, at 240. See also, *e. g.*, *Braniff Airways* v. *Civil Aeronautics Board, supra; Albertson* v. *Federal Communications Comm'n, supra; Western Air Lines* v. *Civil Aeronautics Board,* 194 F. 2d 211 (C. A. 9th Cir.); and *Butterfield Theatres* v. *Federal Communications Comm'n,* 99 U. S. App. D. C. 71, 237 F. 2d 552.

"There is no doubt under the decisions and practice in this Court that where a motion for a new trial in a court of law, or a petition for a rehearing in a court of equity, is duly and seasonably filed, it suspends the running of the time for taking . . . an appeal, and that the time within which [a] proceeding to review must be initiated begins from the date of the denial of . . . the motion . . . ," *Morse* v. *United States,* 270 U. S. 151, 153–154, and "[t]his is also true in administrative proceedings," *Black River Valley Broadcasts* v. *McNinch,* 69 App. D. C., at 316, 101 F. 2d, at 240.[4]

The only reported decision to the contrary is *Consolidated Flowers Shipments* v. *Civil Aeronautics Board,* 205 F. 2d 449 (C. A. 9th Cir.). It was there held that the time within which a petition for review must be filed runs from the date of the Board's decision, not from the date on which it overruled a timely motion for reconsideration; and, inasmuch as the petition for review had not been filed within the former period, the court dismissed the petition as untimely. Recognizing that this result was contrary to its prior decisions,[5] the Court thought it was

---

[4] See *Saginaw Broadcasting Co.* v. *Federal Communications Comm'n,* 68 App. D. C. 282, 287, 96 F. 2d 554, 559; *Southland Industries, Inc.,* v. *Federal Communications Comm'n,* 69 App. D. C. 82, 99 F. 2d 117; *Woodmen of World Life Ins. Assn.* v. *Federal Communications Comm'n,* 69 App. D. C. 87, 99 F. 2d 122; *Red River Broadcasting Co.* v. *Federal Communications Comm'n,* 69 App. D. C. 1, 98 F. 2d 282.

[5] See *Western Air Lines* v. *Civil Aeronautics Board,* 196 F. 2d 933 (C. A. 9th Cir.); *Southwest Airways Co.* v. *Civil Aeronautics Board,* 196 F. 2d 937; *Western Air Lines* v. *Civil Aeronautics Board,* 194 F. 2d 211.

required to so hold because of the last sentence of § 10 (c) of the Administrative Procedure Act, 5 U. S. C. § 1009 (c), saying that, for the purposes of appeal, "agency action *otherwise final* shall be final for the purposes of this subsection whether or not there has been presented or determined any application . . . for any form of reconsideration . . . ." (Emphasis added.) The fallacy of that reasoning was completely exposed and soundly rejected in *Outland* v. *Civil Aeronautics Board, supra.*[6]

[6] In *Outland* v. *Civil Aeronautics Board,* supra, the United States Court of Appeals for the District of Columbia exposed the fallacy in, and soundly rejected the reasoning of, the *Consolidated Flowers* case, *supra,* in the following language:

"The legislative history of 5 U. S. C. A. § 1009 (c) indicates that it was adopted to achieve harmony with the holding in *Levers* v. *Anderson,* 1945, 326 U. S. 219, 66 S. Ct. 72, 90 L. Ed. 26 to the effect that a motion for rehearing was not necessary to exhaust administrative remedies. However, while making judicial review available without a motion for rehearing, that statute did not operate to repeal the law with respect to finality. Where a motion for rehearing is in fact filed there is no final action until the rehearing is denied, as we said in *Braniff Airways, Inc.* v. *Civil Aeronautics Board, supra.* Section 1009 (c) does not command a motion for rehearing in order to reach finality by exhaustion of administrative remedies; it leaves that to each litigant's choice. But when the party elects to seek a rehearing there is always a possibility that the order complained of will be modified in a way which renders judicial review unnecessary. Practical considerations, therefore, dictate that when a petition for rehearing is filed, review may properly be deferred until this has been acted upon. The contrary result reached by the Ninth Circuit has caused parties to file so called 'protective' petitions for judicial review while petitions for rehearing before the Board were pending. A whole train of unnecessary consequences flowed from this: the Board and other parties may be called upon to respond and oppose the motion for review; when the Board acts, the petition for judicial review must be amended to bring the petition up to date.

"We hold that when a motion for rehearing is made, the time for filing a petition for judicial review does not begin to run until the motion for rehearing is acted upon by the Board." 109 U. S. App. D. C., at 92–93, 284 F. 2d, at 227–228.

And on May 1, 1961, the Ninth Circuit itself specifically overruled that case. *Samuel B. Franklin & Co.* v. *Securities Exchange Commission,* 290 F. 2d 719.

There is only one reported decision, involving procedures before the Civil Aeronautics Board, that has presented the precise question we have here. It is *Frontier Airlines, Inc.,* v. *Civil Aeronautics Board,* 104 U. S. App. D. C. 78, 259 F. 2d 808. There, just as here, after a Board certificate had been permitted to become "effective," the Board granted an earlier and timely filed motion for reconsideration and revised the certificate accordingly. It was contended that the revision of the order and, hence, also of the certificate, so made, was "a nullity because it was rendered . . . after the certificate . . . had become effective." (104 U. S. App. D. C., at 80, 259 F. 2d, at 810.) That contention was there soundly rejected.

It therefore seems quite clear to me that, under historic legal procedures and all, save one, of the numerous relevant decisions, the timely filing of the motion for reconsideration—being a legally authorized step in the proceeding—kept the proceeding open and continuing; that having the power, as well as the duty, to decide that motion, the Board had power to grant it, as it did, and thus, necessarily, accordingly to revise its earlier decision—which, until then, was only "a proposed decision" (*Waterman* case, *supra,* at 828)—and that, inasmuch as the Board sustained that motion, the earlier "proposed decision" never did become the final decision in the proceeding.

Inasmuch as all of the reported cases, save the discredited and now overruled *Consolidated Flowers* case, *supra,* are against it, Delta is compelled to rely almost entirely on its claim that the "plain language" of § 401 (f) deprives the Board of power, once it has allowed a certificate to become "effective," to revise its initial decision and the

resulting certificate in pursuance of an earlier and timely filed motion for reconsideration; and that, once it has been so permitted to become "effective," the certificate may be modified or altered only by a separate and independent plenary proceeding under § 401 (g).

The obvious defects in that argument are that (1) under § 401 (f), the "proposed decision" (*Waterman* case, *supra,* at 228) remained subject to revision by the Board in response to the timely filed motion for reconsideration, and (2) the argument ignores the fact that § 401 (g) applies only to proceedings to alter, amend, suspend or revoke a certificate in existence after the authorization proceeding has been fully concluded and finally ended— *i. e.,* after all timely filed motions for reconsideration have been denied, and the time for appeal has expired without an appeal being taken or, if an appeal was taken, the Board's decision has been finally affirmed.

Surely it cannot be doubted that, if the Board, instead of granting it, had denied the motion for reconsideration, the Court of Appeals, on judicial review, or this Court on certiorari, could reverse the Board's decision and remand the case to the Board with directions to grant the motion for reconsideration. It is certain that such a judgment would operate not only on the Board's decision but, as well, on its "effective" certificate. If the Board has power, when thus directed by the judgment of a reviewing court, to revise, modify or vacate its erroneous decision and its resulting certificate, even though "effective," why should the result be different if the Board, without such judicial direction, notes its error, grants the timely filed and pending motion for reconsideration, and accordingly revises its decision and the resulting certificate?

Apart from the discredited and now overruled Ninth Circuit case of *Consolidated Flowers Shipments* v. *Civil Aeronautics Board, supra,* Delta cites no case that involves the effect upon a Board decision of a timely filed motion

for reconsideration, or of a Board-revised order made in pursuance of such a motion, or that in any way supports it. Its claim of support by *United States* v. *Seatrain Lines,* 329 U. S. 424; *Watson Bros. Transportation Co.* v. *United States,* 132 F. Supp. 905; and *Smith Bros. Revocation of Certificate,* 33 M. C. C. 465, is wholly unfounded. None of those cases involved or dealt with the question we have here. None of them involved or dealt with any question respecting the effect of a timely filed motion for reconsideration upon an administrative order. To the contrary, in each of them the administrative proceeding had long since finally ended—*i. e.,* all timely filed motions for reconsideration had been denied, the time for judicial review had expired, and the proceeding was in all respects closed.

The only relevant statement in the *Seatrain* case, *supra,* is squarely opposed to Delta's position, namely, "The certificate, when finally granted *and the time fixed for rehearing it has passed,* is not subject to revocation in whole or in part except as specifically authorized by Congress [*i. e.,* in an independent plenary proceeding]." 329 U. S., at 432, 433. (Emphasis added.) Here, "the time fixed for rehearing [had not] passed," but,. instead, an appropriate motion for reconsideration had been timely filed and was pending.. Surely, the Board not only had power, but also a duty, to rule on that motion and, if it found it meritorious, to sustain it, and accordingly to revise its decision and resulting certificate.

The *Watson* case, *supra,* has no relevance whatever to this one. In the *Smith* case, *supra,* the Commission was careful to point out that ". . . the certificate marks the end of the proceedings, *just as the entry of a final judgment or decree marks the end of a court proceeding. . . ."* 33 M. C. C., at 472. (Emphasis added.) It is certain that "a proposed decision" (*Waterman* case, *supra,* at 228) of a court does not, while a timely filed

motion for new trial, rehearing or reconsideration is pending, end the proceeding, but it is the denial of the motion, and expiration of the time to appeal, that "marks the end of a court proceeding"; and "[t]his is also true in administrative proceedings." *Black River Valley Broadcasts* v. *McNinch,* 69 App. D. C., at 316, 101 F. 2d, at 240.

Section 401 (f) contemplates that the Board may issue a certificate of convenience and necessity "for a limited period of time under subsection (d)(2) of [that] section." Although the Board did not expressly say, in its order of September 30, 1958, that the certificate thereby authorized to Delta would continue only "for a limited period of time," it did expressly point out in its order of November 28, 1958, denying Lake Central's motion for a stay and permitting the Delta certificate to become effective, that Lake Central's motion for reconsideration was still pending undetermined, and that it promptly would "address itself to the merits of [that] petition for reconsideration, and [that its] order dealing with [that] matter [would] issue at a later date." Hence, the Delta certificate, though thus allowed to become "effective," was, in the law's regard, as surely "issued for [the] limited period of time" expiring with the date of the possible grant of Lake Central's motion for reconsideration, as if that limitation had been expressed in the Board's authorizing order and certificate.

Here, as in *Western Air Lines* v. *Civil Aeronautics Board,* 194 F. 2d, 211, 214 (C. A. 9th Cir.), Delta "acted with its eyes open and at its own risk. It was aware that the proceedings before the Board had not become final, and would not until the expiration of the period of 30 days within which petitions for reconsideration might be filed."

Surely Lake Central's timely filed motion for reconsideration kept the whole proceeding open, including the Board's order and resulting certificate, until that motion

was denied. It was not denied. Instead, it was granted, as surely the Board had power to do. Therefore, the Board's originally "proposed decision" never did become the final decision in the proceeding. And when that "proposed decision" thus fell, the certificate which it authorized, and which had been permitted to become *temporarily* "effective," necessarily fell with it, as it was always subject to the results of that motion.

It is not to be gainsaid that the practice, sometimes, as here, followed by the Board, of permitting route certificates to become "effective" while nonfrivolous motions for rehearing or reconsideration are pending undetermined,[7] is perilous business and only rarely, if ever, is justified. But it does not follow that, once having permitted a route certificate to become "effective," the Board has lost all power to decide a pending motion for reconsideration, and, if found meritorious, to grant it, and thus itself to rectify the errors in its "proposed decision" and in the route certificate that was thereby erroneously authorized.

For these reasons, I think the Court has fallen into clear error in affirming the judgment of the court below, which, in my view, is contrary to the settled law and should be reversed.

---

[7] In many instances, the Board has permitted certificates to become effective notwithstanding a motion or motions for reconsideration were pending undetermined. And in a number of such cases, as here, the Board has granted such motions and accordingly modified the "effective" certificate. See, *e. g., North Central* case, 8 C. A. B. 208; *Cincinnati-New York Additional Service,* 8 C. A. B. 603; *United-Western, Acquisition of Air Carrier Property,* 11 C. A. B. 701; *Service to Phoenix* case, Order E–12039 (1957); *South Central Area Local Service* case, Order E–14219 (1959).