**TENNESSEE GAS TRANSMISSION COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent,**

**Pennsylvania Public Utility Commission and the Commonwealth of Pennsylvania, Intervenors.**

**No. 7751.**

United States Court of Appeals Tenth Circuit.

Dec. 30, 1964.

Rehearing Denied Feb. 11, 1965.

Stanley M. Morley, of May, Shannon & Morley, Washington, D. C. (W. C. Braden, Jr., and B. J. Williamson, Houston, Tex., on the brief), for petitioner.

Howard E. Wahrenbrock, Sol. (Richard A. Solomon, General Counsel, Robert L. Russell, Asst. General Counsel, and Israel Convisser, Washington, D. C., on the brief), for respondent.

Before MURRAH, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

LEWIS, Circuit Judge.

This case is related to but not determined by our consideration in Pan American Petroleum Corporation v. FPC, 10 Cir., 339 F.2d 694, and brings the petitioner Tennessee Gas Transmission Company seeking review under section 19(b) of the Natural Gas Act, 15 U.S.C. § 717r (b), of an order of the Federal Power Commission. The subject order is premised upon a finding that Tennessee constructed and is operating facilities for the transportation and sale of gas without the requisite Commission authorization and orders Tennessee to take steps to bring it in compliance with the provisions of the Natural Gas Act.

On December 1, 1960, Tennessee acquired from Pan American, through a non-jurisdictional conveyance of oil and gas leases, extensive interests in the Bastian Bay Field in Louisiana. On October 4, 1960, Tennessee had applied to the Commission for a so-called "budget-type" certificate of public convenience and necessity for the calendar year 1961 which, upon approval, would authorize Tennessee to expend not more than $5,000,-000 for the construction and operation of gas purchase facilities with a limitation of $500,000 upon the total cost of a single facility. The application was approved and, on January 6, 1961, the Commission issued the certificate as requested by Tennessee. Thereafter, Tennessee, in reliance upon this "budget-type" certificate, constructed a pipeline from the Bastian Bay Field into its main transmission line, a distance of 2.63 miles with a cost of approximately $288,000. The practical effect of the construction was to attach to the Tennessee distribution system the potential of 750 billion cubic feet of natural gas at an estimated cost of $159,463,500.

The Commission, after it obtained knowledge but not notice of Tennessee's acquisition of the Pan American leases and the construction of the pipeline, reopened the proceedings related to the issuance of the "budget-type" certificate to explore the question of whether Tennessee's connecting facility was authorized by the certificate. After a hearing which was expanded to consider the jurisdictional aspects of the Pan American-Tennessee conveyance, the Commission determined that the construction of the Bastian Bay Field pipeline was not within the actual or legal contemplation of the "budget-type" certificate and was

thus an unauthorized facility within the Commission's jurisdiction. We think it almost self-evident that the ruling and order of the Commission in such regard are manifestly correct and proper when projected against the over-all purpose of the Natural Gas Act and the policy, purpose and procedure pertaining to the issuance of "budget-type" certificates.

■ Whenever natural gas is dedicated to interstate commerce it is the manifest duty of the Commission to scrutinize the transaction in all its facets to the end determination of the public convenience and necessity. Atlantic Refining Co. v. Public Service Comm'n (CATCO), 360 U.S. 378, 391–392, 79 S.Ct. 1246, 3 L.Ed.2d 1312. This duty cannot be declined by regulation or otherwise nor can it be postponed absent consent of those immediately concerned.

Sunray Mid-Continent Oil Co. v. FPC, 10 Cir., 270 F.2d 404. The Commission cannot pre-grant a certificate and by so doing lose its basic jurisdiction to exercise regulatory powers. To do so would be to abandon the administrative process. But the Commission may adopt regulatory policies and procedures which further the purposes of the Act and result in practical and desirable abridgments to the accomplishment of those purposes. Such is clearly the intent of the Commission in its issuance of "budget-type" certificates and its expressed policy and regulatory aids pertaining thereto.[1]

■ That a "budget-type" certificate is intended by the Commission to apply only to routine expenditures which would leave but an unnoticeable impact upon price structure, and that Tennessee so

1. The applicable regulation provides (18 CFR § 2.58):

"Budget-type certificate applications—gas purchase facilities.

"In accordance with the Commission's advice in Order No. 185, issued February 8, 1956 (15 FPC 793 at 794) and unless prevented by other factors, such as interventions in opposition, we will issue budget-type authorizations to natural gas pipeline companies covering the construction and operation of gas purchase facilities after hearing under the abridged procedure, upon applications for certificates of public convenience and necessity, filed under § 157.6 of this chapter, provided that:

"(a) The total estimated cost of the facilities to be installed in a given twelve-month period does not exceed 1½ percent of the applicant company's plant account or $5,000,000 whichever is the lesser.

"(b) The total cost of any single project facilities to be installed during the authorization period does not exceed 25 percent of the total budget amount or $500,000, whichever is the lesser.

"(c) The applicant agrees to file with the Commission, within sixty days after expiration of the authorization, a statement showing for each individual project:

"(1) Description of facilities installed, i. e., miles and size of pipelines, compressor horsepower, metering facilities.

"(2) Location of facilities.

"(3) Actual installed cost of facilities subdivided by size of pipe, compressing, metering and appurtenant facilities.

"(4) Estimated recoverable gas reserves in Mcf at 14.73 psia made available to applicant by means of the facilities.

"(5) Names of fields connected.

"(6) The names of the independent producers from whom the gas is being purchased together with the respective dates of the gas sales contracts and the docket number of the related seller.

"(d) 'Gas purchase facilities' means those facilities necessary to connect the applicant's system with the facilities of a seller authorized by this Commission to make a sale for resale in interstate commerce to the applicant."

And the expressed policy of the Commission describes the budget-type application as

" * * * a single certificate application covering in general outline along the lines of a budget estimate the proposed routine construction intended to be undertaken by it during the current or ensuing fiscal year, listing the facilities proposed, the estimated cost of each item, the capacity, purpose, and time of intended construction, customers affected by each facility proposed, effect of proposals upon gas supply and deliverability, rates, service, and other pertinent information."
15 F.P.C. 793 at 794 (Order No. 185), 21 Fed.Reg. 1485.

understood the limitation, is made manifest by Tennessee's application. The company there stated:

"During the present calendar year Applicant has substantially improved its over-all system gas supply. This has been made possible in part by the ability of Applicant to attach new reserves pursuant to its 'budget-type' authorization to construct the necessary facilities without the time consuming requirement of obtaining specific authorization. In addition, the 'budget-type' authorization enabled certain of the independent producers to initiate the sale of gas to Applicant pursuant to Section 157.28 of the Commission's Regulations Under the Natural Gas Act, pending final Commission action on their certificate applications.

"When granted, the authorization requested herein will relieve Applicant of the time and expense of preparing numerous relatively minor certificate applications, and the Commission and its Staff of the burden of processing such routine applications. Furthermore, this application is consistent with the policy declaration of the Commission contained in its Order No. 185."

And it is equally apparent that Tennessee did not contemplate that the certificate would cover the Bastian Bay Field project because, although the transaction with Pan American was imminent, Tennessee stated in its application that it did "not know the quantity or location of the gas supply to be connected to Applicant's system as contemplated herein."

We are not impressed with the emphasis that Tennessee places upon the admitted fact that its connecting facility was constructed in literal compliance with the monetary restrictions contained in the "budget-type" certificate. The fact that the proximity of Tennessee's main transmission line to the vast resources of the Bastian Bay Field allowed the pipeline to be built at a cost of $288,000 is a mere economic coincidence and does not unequivocally establish the construction as routine or minor in nature. The very term "budget-type" contemplates an anticipated projection of probable expenditures for routine maintenance and expansion of such minor impact upon price structure that a blanket advance approval, rather than the delay and difficulty of standard administrative practice, is warranted. The acquisition and utilization of the Bastian Bay resources were neither routine nor minor in their impact, and the very magnitude of the event was properly considered by the Commission as a factor negativing the authority claimed under the "budget-type" certificate.

■ So, too, we find no merit in Tennessee's contention that, even if the construction was not covered by the certificate, the Commission erred by reopening the earlier proceedings. While it admits that the Commission may have been able to issue a show cause order or to begin new proceedings to determine that Tennessee had exceeded its authorization, it claims that the Commission must strictly follow the procedures outlined by the governing statutes and regulations and could not alter, amend, or revoke the certificate, that had become final, by reopening the proceedings. In support of this contention Tennessee relies on United States v. Seatrain Lines, 329 U.S. 424, 67 S.Ct. 435, 91 L.Ed. 396, which held that the Interstate Commerce Commission was without authority to reopen certification proceedings to cancel or amend a certificate of public convenience and necessity, and CAB v. Delta Air Lines, Inc., 367 U.S. 316, 81 S.Ct. 1611, 6 L.Ed.2d 869, which held that the Civil Aeronautics Board could not alter a certificate of public convenience and necessity once it had become effective without complying with the statutory requirements of formal notice and hearing. Neither of these cases supports Tennessee's contention; in the case at bar the Commission did not purport to alter or revoke Tennessee's certificate but merely to determine whether

the pipeline construction was authorized by the order and certificate as granted. Since Tennessee was not prejudiced by the Commission's actions, the fact that the original proceedings were reopened can be of no significance.

The order of the Commission is affirmed.